IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DENNIS SATTERFIELD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:06-CV-0226 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION
# TO REVERSE THE DECISION OF THE COMMISSIONER

Plaintiff DENNIS SATTERFIELD brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB) and supplemental security benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED, and the case REMANDED for further administrative proceedings.

I.
THE RECORD

Plaintiff filed applications for DIB on April 14, 2001 and September 12, 2002, and for SSI benefits on April 14, 2001, September 25, 2001, and September 12, 2002, alleging he

became disabled on March 14, 2000,[1] (Tr. 75-77, 78-80, 313-16, 324-26, 327-28), and unable to work due to impairments of a "bad back," carpal tunnel syndrome in both hands, a sleeping disorder (sleep apnea), breathing problems, heart problems, high blood pressure, and feet swelling. (Tr. 91-100, 106-14). Plaintiff alleged his impairments limited his ability to work because he had no strength in his hands, fell asleep all the time, and could only stand for about two (2) hours.

At the time he filed his initial applications, plaintiff was thirty-nine years old. Plaintiff had obtained a high-school-equivalent education (Tr. 98), and had past relevant work experience as a carpenter's helper. (Tr. 83-90, 115-22, 126-33).

The Social Security Administration denied benefits initially and upon reconsideration. (Tr. 33-48, 52-56, 317-23, 328A-333). An administrative hearing was held before an Administrative Law Judge (ALJ) on September 22, 2004. (Tr. 393-419). At the hearing, a vocational expert (VE), was given a hypothetical involving a forty-two-year-old man, with a GED education, and past relevant work as a carpenter's helper, and who could perform medium work requirements but needed to avoid moderate exposure to fumes, odors, dust, gases, and poor ventilation. The VE testified such an individual could perform the jobs of laborer, stores; kitchen helper; and dining room attendant. (Tr. 410-11). The VE testified that same individual, if limited to light work requirements, could perform the jobs of photocopy machine operator, light; sorter, agricultural products; and electronics worker. (Tr. 411-12). The VE then testified that same individual, if limited to sedentary work requirements, could perform the jobs of final

---

[1] In his September 2002 application, plaintiff alleged he became unable to work because of a disabling condition on May 15, 2000.

assembler; call out operator; and surveillance systems monitor. The VE testified such an individual, with the additional limitation that he would have to carry and utilize oxygen breathing apparatus, would have to have a special accommodation at the medium level of work. At the light level of work, the VE testified such an individual might be able to perform the job of electronics worker if he could secure the apparatus to himself. He further opined, however, that with up to six hours of walking throughout the workday, the breathing apparatus could be a problem unless it was light enough to carry over a shoulder. (Tr. 413). At the sedentary level, such an individual could perform all of the jobs identified by the VE.

Counsel for plaintiff then questioned the VE but the transcription of such questioning, and the responses, was incomplete. The only questions and responses which were able to partially be transcribed were the following:

> Q: Would your opinion change on the sedentary, based on the length of time the bottles last? In other words, the bottles don't last more than – or the small bottles don't last more than [INAUDIBLE].
>
> A: Sure.
>
> . . .
>
> Q: When you're talking about the final assembler [of eyeglasses] . . . that requires fine motor skills to [INAUDIBLE]?
>
> A: Yes, it does.
>
> . . .
>
> Q: Now, surveillance monitor, I assume it watches – watching –
>
> A: Watching a television screen.
>
> Q: And normally do they also have to be able to move or check out [INAUDIBLE]?

> A: Not – there is a distinction to be made between the security guard and the surveillance system monitor. The security guard would have a course or places he had to stop and look around. Surveillance system monitor would be more stationary, watching the [TV screen].

On April 26, 2005, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision. (Tr. 339-48). The ALJ's decision was based, in part, on the testimony of the VE. On June 10, 2005, the Appeals Council vacated the ALJ's decision and remanded the case to an ALJ for resolution of the following issues:

> The claimant is considered to be obese for his height and weight. The Administrative Law Judge stated on page 3 of the decision that he would address the claimant's weight in his analysis of the combined effects of the claimant's impairments. This was not done and needs to be considered pursuant to Social Security Ruling 02-01p. This evaluation may provide other limitations to the claimant's residual functional capacity in light of his ankles swelling and his alleged problems with walking.
>
> In addition, the hearing recording is inaudible; therefore, the record is incomplete. The tape of the hearing conducted on September 22, 2006 is partially inaudible at the points of the claimant's representative questioning him as well as the vocational expert testimony. This is due to the tape being recorded on both sides, which made it difficult to understand the testimony. Without an audible hearing tape, the record is incomplete.

(Tr. 355-57). The Appeals Council instructed the ALJ, upon remand, as follows:

> Obesity has been considered as a severe impairment, but no evaluation of this impairment is present. Evaluation of obesity is necessary in this case pursuant to Social Security Ruling 02-01p in order to complete the decision.
>
> Secure an audible copy of the hearing tape in order to complete the decision. If necessary, offer the claimant the opportunity for a new hearing.

The Appeals Council stated that, in compliance with the above, the ALJ would "address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision."

A second administrative hearing was held before a different ALJ on November 14, 2005. (Tr. 420-38). Plaintiff appeared and was represented by counsel. Plaintiff testified about his recent diagnosis of diabetes, past relevant work, shortness of breath, recurring numbness in his feet and hands, sleep apnea, varying chest pains, acid reflux, sinus problems, use of oxygen, inability to exercise, carpal tunnel syndrome, activities of daily living, swelling in his feet, and the ineffectiveness of his diet in losing weight. No vocational expert was present to testify. On February 22, 2006, the ALJ rendered an unfavorable decision, concluding plaintiff was not under a disability as defined in the Social Security Act, at any time through the date of the decision. (Tr. 13-25). The ALJ initially noted he was conducting the hearing on remand from the Appeals Council "to consider [plaintiff's] obesity pursuant to Social Security Ruling 02-01p; to offer [plaintiff] the opportunity for a new hearing; and to issue a new decision." (Tr. 16). In his evaluation of the evidence, the ALJ noted plaintiff was 43-years-old with the equivalent of a high school education (GED) and past relevant work experience as a carpenter's helper, described by plaintiff as heavy, semi-skilled work. (Tr. 17). The ALJ noted plaintiff's allegations that he became disabled on March 15, 2000 due to a "bad" back, carpal tunnel syndrome involving both hands, COPD, and sleep apnea.

The ALJ found plaintiff had not engaged in substantial gainful activity on or after May 15, 2000, his alleged onset date of disability. (Tr. 18). The ALJ found plaintiff had medically determinable impairments of "severe" asthma, COPD, and sleep apnea, and that such impairments were "severe" because each impairment significantly limited his physical or mental ability to do basic work activities. The ALJ noted the Appeals Council's order to consider

plaintiff's weight under the applicable SSR ruling. He also noted the former ALJ's finding that plaintiff's obesity was a "severe" impairment as defined in the regulations. The second ALJ found the medical evidence showed some doctors had diagnosed plaintiff with obesity and/or dyspnea (shortness of breath), but that none of those doctors reported plaintiff's weight caused any significant functional limitations when considered alone or in combination with his other impairments. The ALJ noted a physician who conducted a consultative evaluation opined plaintiff's sleep apnea was related to his obesity but, in a work assessment form, reported plaintiff had "no limitations." The ALJ noted the physician reported plaintiff had no difficulties with regard to lifting and carrying objects, sitting, standing, walking, performing pushing or pulling maneuvers, or performing most of the postural movements. The ALJ acknowledged the physician did state plaintiff was obese and deconditioned and, consequently, could "never" engage in climbing or balancing. The ALJ further noted a state agency doctor had reviewed plaintiff's medical history and determined plaintiff, who had asthma and chronic back pain, could nevertheless perform a full range of medium work. The ALJ also noted a second state agency doctor reported plaintiff had atypical chest pains and nocturnal hypoxemia and polycythemia, but concurred with the previous state agency doctor that plaintiff could perform a full range of medium work despite his impairments. The ALJ noted plaintiff testified at the hearing that he experiences shortness of breath whenever he does any "work," but found there was substantial evidence establishing plaintiff's weight problem did not meet the criteria for a "severe" impairment, (Tr. 19), and, contrary to the finding by the first ALJ, determined plaintiff's obesity was not a severe impairment.

The ALJ, again noting plaintiff's "severe" impairments of asthma, COPD, and sleep apnea, observed plaintiff's pulmonary function test, clinical examination, and spirometry test were essentially normal, revealed clear lungs with no rales, and showed levels well within normal limits. Based on the above evidence, the ALJ found plaintiff's "severe" impairments did not meet or medically equal, either singly or in combination, the criteria set forth in the Listing of Impairments. The ALJ specifically compared Section 3.00 et seq. of the listed impairments.

After reciting medical evidence of record, the ALJ found plaintiff did not meet his burden of proving he had a "severe" back impairment. Consequently, the ALJ considered plaintiff's alleged back problem as a "non-severe" impairment. Noting that even though plaintiff testified regarding hand numbness, the ALJ found no credible medical documentation showing plaintiff currently had carpal tunnel syndrome or that such constituted a severe impairment. The ALJ noted plaintiff had been diagnosed with coronary artery disease and hypertension, and had a myocardial infarction in 1999. After outlining the medical evidence, the ALJ found plaintiff had only very sporadic atypical chest pain, and that there was a lack of medical evidence showing plaintiff's alleged chest pains caused any significant functional limitations for a period of twelve continuous months under review, (Tr. 20), and found plaintiff did not have a "severe" cardiovascular impairment. The ALJ further found that although plaintiff had been diagnosed with diabetes mellitus, there was no diagnosis of diabetic neuropathy and that control of plaintiff's diabetes seemed to be entirely dependent upon whether he took his medication. As it appeared plaintiff's diabetes was adequately controlled with medical treatment, the ALJ found plaintiff did not have "severe" diabetes mellitus. The ALJ noted plaintiff had been diagnosed

with gastroesophageal reflux disease (GERD), but that no treating or examining doctor had found this medical condition caused plaintiff any significant limitations of function. The ALJ found plaintiff's GERD did not constitute a "severe" impairment. (Tr. 21).

After comparing the medical record as a whole to plaintiff's testimony, the ALJ found plaintiff was not totally credible and exaggerated the nature and extent of his symptomology. (Tr. 22, 24). The ALJ determined plaintiff had the residual functional capacity (RFC) to perform a slightly limited range of light exertional level work, and a full range of sedentary work. The ALJ noted plaintiff's past relevant work (PRW) was at the heavy exertional level and, based on his RFC, determined plaintiff was unable to perform his PRW. (Tr. 23). The ALJ acknowledged the burden shifted to the Administration to show there were other jobs existing in significant numbers in the national economy that plaintiff can perform, consistent with his RFC, age, education, and work experience. Even though no vocational expert had been present at the second ALJ hearing, the ALJ stated:

> At the hearing, I asked the vocational expert whether there are any jobs existing in the national economy that the [plaintiff] could perform given his vocational profile and his residual functional capacity. In response, the vocational expert testified that the [plaintiff] could work at the following jobs: a photocopier. . . , an agricultural sorter . . . , an electronics worker . . . , a final assembler . . . , a call out operator . . . , and as a surveillance system monitor . . . .

The ALJ then found that "[b]ased on the vocational expert testimony," there were a significant number of jobs existing in the national and regional economies which plaintiff was able to perform. The ALJ concluded plaintiff was not disabled within the meaning of the Act at any time through the date of his decision.

On February 28, 2006, counsel for plaintiff appealed the ALJ's decision noting, *inter alia*, that there was no vocational expert at the November 14, 2005 hearing. (Tr. 12). On June 23, 2006, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 8-10), rendering the ALJ's decision the final decision of the defendant Commissioner. Plaintiff now seeks judicial review.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164.

Stated differently, the level of review is not *de novo*.  The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue.  The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUES

The second ALJ determined plaintiff to be not disabled at step five of the five-step sequential analysis.  This Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting the finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether there were any errors of law committed in making this determination.  Plaintiff appears to present the following issue:

> The Commissioner's final decision that plaintiff was not disabled was not supported by substantial evidence because the ALJ failed to allow plaintiff an opportunity to cross-examine the vocational expert's testimony at plaintiff's second administrative hearing.

### IV.
### MERITS

#### A.
*Obesity*

Plaintiff has not assigned any error regarding the second ALJ's determination that plaintiff's obesity did not constitute a severe impairment.  The first ALJ had determined plaintiff's obesity to be a severe impairment and the Appeals Council remanded the case for

consideration of plaintiff's obesity pursuant to the Social Security Ruling 02-1p and its effect singly and in combination with plaintiff's other impairments.  No analysis of plaintiff's obesity was conducted on remand.  Instead, the second ALJ determined plaintiff's obesity did not constitute a severe impairment.  Plaintiff has not challenged or assigned error to this finding and it will not be further addressed.

B.
*Reliance on Prior VE Testimony*

Plaintiff contends this issue is one of procedure, and contends the second ALJ decision, after Appeals Council remand, is fundamentally flawed.  Plaintiff notes the ALJ's statement in his decision discussing the VE's testimony, indicating he questioned the VE at the hearing, and that the VE testified in response to such questioning.  Plaintiff maintains the "problem with these statements by the ALJ is that no vocational expert testified at [plaintiff's] second hearing."  As plaintiff correctly contends, it was only at the first hearing that a VE testified.  No VE was present or testified at the second hearing.  The VE testimony from the first hearing relied upon by the second ALJ, is the same testimony the Appeals Council stated was "partially inaudible at the points of the claimant's representative questioning him as well as the vocational expert testimony." Plaintiff concludes his argument contending the ALJ incorrectly determined he was "not disabled" based upon the testimony of a VE when, in fact, no VE testified.

Plaintiff, noting the ALJ has a duty to fully and fairly develop evidence, contends the second ALJ failed to do so in his second decision.  Plaintiff notes the ALJ based his denial upon non-existent VE testimony, and submits this decision denied plaintiff any opportunity to cross-examine the VE.  Plaintiff notes that in its remand order, the Appeals Council instructed the VE to consider plaintiff's obesity as an impairment, and specifically stated it could not understand

the cross-examination of the VE. Plaintiff argues the ALJ should have called a VE at the second hearing if he was going to rely upon VE testimony. Plaintiff concludes the ALJ's quotation of VE testimony from the first hearing prejudiced plaintiff in that he was not allowed an opportunity to cross-examine the expert.

Defendant construes plaintiff's issue more narrowly. Defendant frames the issue as whether the ALJ failed to fully and fairly develop the record, and whether plaintiff was denied due process by the ALJ's failure to obtain testimony from a VE at the second administrative hearing. Defendant initially cites Fifth Circuit precedent holding a decision of an ALJ will be not be reversed for not adequately developing the record unless the plaintiff shows he was prejudiced in some way. Defendant maintains to establish prejudice, a plaintiff must show he "could and would have adduced evidence that might have altered the result." Defendant argues plaintiff's bald assertion that had he been given the opportunity to cross-examine the VE, "the defendant's decision might have been different," does not explain what evidence plaintiff might have obtained from the VE or how that evidence could have changed the result. Defendant maintains that although the VE's responses to some of counsel's questions at the first hearing were inaudible, the record clearly shows all of counsel's questions on cross-examination concerned limitations the ALJ eventually found were not supported by the record. Specifically, defendant identifies counsel's question posed to the VE of the need to carry oxygen bottles for use during the workday and limitation that fine motor skills are affected by carpal tunnel syndrome. Defendant contends the ALJ is not bound by VE testimony based upon evidentiary assumptions ultimately rejected by the ALJ. Defendant argues that because the ALJ properly found plaintiff did not have any limitations with respect to oxygen use during the workday and

did not have carpal tunnel syndrome, the VE's testimony regarding those limitations was irrelevant and would not provide a basis for changing the ALJ's decision. Defendant concludes plaintiff failed to carry his burden to show additional VE testimony would have changed the outcome of his case.

The Appeals Council made a specific finding that the record in this case was incomplete because the hearing recording was inaudible during counsel's questioning of plaintiff, as well as counsel's questioning of the VE. The Appeals Council remanded the case to, *inter alia*, secure an audible copy of the hearing tape in order to complete the decision. Defendant appears to contend, first, that the record is not incomplete and, second, even if it is incomplete, plaintiff has not shown he was prejudiced by an incomplete record. Defendant argues that although the VE's response to some of counsel's questions at the first hearing were inaudible, the transcription was sufficient to indicate the import of counsel's questions to the VE, *i.e.*, that they only dealt with alleged limitations which the ALJ eventually found not supported by the record. The fact remains, however, that the Appeals Council specifically found the first hearing recording inaudible and the record incomplete and this Court is not in a position to question that determination. Secondly, this Court does not agree with defendant's analysis that the inaudible portion "<u>clearly</u>" involved non-severe impairments. While, as defendant argues, some of the cross-examination questions appear to have concerned limitations eventually found not to be present, these questions were not the only inaudible portions of the hearing. Pertinent portions of the transcript are set forth below:

CROSS-EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q: Would your opinion change on the sedentary, based on the length of time the bottles last? In other words, the bottles don't last more than – or the

        small bottles don't last more than [INAUDIBLE].

A:        Sure.

Q:        [INAUDIBLE].

A:        Sure.  Sure.

Q:        [INAUDIBLE].

A:        Sure.  [INAUDIBLE].

Q:        Right. And I understand that.  We also have –

A:        [INAUDIBLE].

Q:        We also have big problems with [INAUDIBLE].

A:        Right.

Q:        [INAUDIBLE].

A:        Right.  Right.

(Tr. 414).  While the initial question may have involved oxygen use, it is not possible to determine whether the questions following the initial questions only involved oxygen use.  The same pattern is present with questions involving carpal tunnel syndrome.

Q:        Because I just – I was trying to get to the heavy and the first two hypotheticals, we didn't really discuss the carpal tunnel problems [INAUDIBLE]?

A:        Probably.

Q:        And basically [INAUDIBLE] necessary that is and he couldn't [INAUDIBLE].

A:        Effect.  You know, a lot, a little, some.

Q:        I am thinking anything that has to do with [INAUDIBLE].

A:        It would affect it to some degree [INAUDIBLE].

| | |
|---|---|
| Q: | Actually [INAUDIBLE]. |
| A: | [INAUDIBLE]. |
| Q: | That's – |
| A: | You know. |

(Tr. 415). As with the previous set of questions regarding oxygen use, while there was an initial question regarding carpel tunnel, the record is not clear that the questions following the initial question only involved carpel tunnel—they may have or they may not have.

## PREJUDICE

Defendant next argues plaintiff was not prejudiced by the use of the deficiencies identified, and is not entitled to relief. Specifically, defendant maintains plaintiff has not explained what evidence he might have obtained from the VE or how that evidence could have altered the result. Since the record does not fully disclose all of the VE's testimony or the cross-examination questions, it is particularly difficult to predict what evidence could have been adduced during a cross-examination of the vocational expert since the particular questions asked during a cross-examination oftentimes depend upon the answers which are given to previous questions. Consequently, the best-case scenario for defendant is that plaintiff was denied his right to cross-examine the vocational expert. The worst case scenario for defendant is that there simply was no vocational expert testimony presented and the determination of not disabled cannot stand in the absence of vocational expert testimony at step five establishing other jobs plaintiff could perform. The defendant has not made any argument, nor could he, that the ALJ could have applied the medical-vocational guidelines at step five. The ALJ did not do so and both, the first and the second, ALJ found some non-exertional impairments which would prohibit

application of the grid.

In *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110 (5th Cir. 1991), the court held plaintiff was denied due process when he was denied the right to cross-examine the vocational expert. As a result of such denial of the right to cross-examine, the case was reversed and remanded for further administrative proceedings. In *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990), the court, pursuant to *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), held that due process requires a social security client be given the opportunity to cross-examine and subpoena individuals who submit reports. Although the vocational expert testified at the first ALJ hearing, his testimony and the questions and answers were inaudible. Since no vocational expert testified at the second ALJ hearing, the most that the inaudible testimony from the first ALJ hearing could be considered for would be as a report from a vocational expert. If, in fact, the second ALJ was of the opinion it was not necessary for him to produce vocational expert testimony and that he could rely on vocational expert testimony from the first ALJ hearing, he certainly could have so stated at the hearing and in his opinion. He should have given plaintiff and his counsel notice of his intention to not call a vocational expert and instead to adopt the VE testimony from the first hearing. Had he done so, plaintiff's counsel would have had an opportunity to object or acquiesce in that decision. While the Court recognizes strict adherence to evidentiary rules and procedures may not be required during an administrative hearing, minimal due process is required and minimal due process includes the right to cross-examine the expert witness or the witness's report. That minimal amount of due process was not provided when defendant, without notice, incorporated VE testimony from a

prior hearing, which testimony had been expressly found by the Appeal Councils to be inaudible.

The undersigned finds the denial of the of the opportunity for cross-examination of the witness was prejudicial. This case should be remanded to elicit VE testimony and allow cross-examination of the VE concerning jobs available for an individual of plaintiff's age, education, work history, and RFC.

## V.
## CONCLUSION

The denial to plaintiff of the right to cross-examine and/or meaningfully cross-examine the vocational expert was reversible error. The ALJ's findings do not have sufficient evidentiary support. The determination of not disabled should be reversed and the case remanded for further evaluation consistent with this report, to wit: to elicit VE testimony and allow adequate cross-examination of the VE concerning jobs available for an individual of plaintiff's age, education, work history, and RFC.

## VI.
## RECOMMENDATION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of SSI benefits be REVERSED and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of September, 2009.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).